Frost, J.
delivered the opinion of the Court.
All the grounds of appeal, except the first, present questions of fact, and the Court is satisfied with the verdict.
The questions presented by the first ground, are, whether a subsequent sheriff has the same authority to make titles to land, as the sheriff who made the sale; and if he has, whether he can execute titles to any other than the actual purchaser ; and if he may execute titles to any other person, whether the title to the land in dispute was legally conveyed to the defendant.
Prior to the Act of 1803, it was the duty of the sheriff, who had sold land under a fieri facias, to complete the sale by the execution of titles, even after the term of his office had expired. To remedy this inconvenience, it was enacted that if any sheriff shall sell any property and “ die, resign, or be removed from office,” before he has executed titles therefor, it shall be lawful for his successor to make titles to the purchaser. By an Act passed in 1829, and incorporated in the sheriff’s Act of 1839, it is provided that if any sheriff has sold, or shall legally sell, real- or personal estate, and such sheriff is dead, resigned, or otherwise out of office, before he has executed titles therefor, it shall be lawful for any subsequent sheriff, upon the terms of sale being complied with, or satisfactory evidence furnished that they have been complied with, to make titles therefor “to the purchaser.”
It seems plainly the intention of the Act to substitute the subsequent sheriff in stead of his predecessor, who made the sale, for the purpose of executing titles; and to transfer to him all the power and authority over the subject, which his predecessor possessed. The Act is remedial, and should be so construed as to redress the mischief. It was the purpose of the Act to remedy the inconvenience experienced from the exercise of official duties by one who had ceased to be an officer. This purpose would be only partially accomplished by restricting the power pf-the subsequent sheriff to the .making of titles to the actual purchaser; and reserving to the sheriff who made the sale, the power to make titles to an assignee, &c. of the putchaser.
*216 Then may the sheriff, who made the sale, execute titles to any other person than the actual “purchaser?” It is and has been, indefinitely, the common practice for the sheriff’ to make titles for property to the assignee of the purchaser; or to the person whom the bidder, entered as the purchaser in the sheriff’s book, may represent to be the actual buyer. So many titles have been acquired in this way, that they cannot now be declared illegal. If the sheriff may convey to an as-signee, why may he not to a devisee? And if to persons who thus claim by purchase, why may he not to those who claim by descent? It is objected that, in the exercise of this authority, it would be necessary for the sheriff to determine who is devisee or heir, and he would thus be invested with judicial functions. This objeción applies, and in a much greater degree, to the levy and sale of property under execution. The same expedients and remedies may be resorted to, in either case, if the sheriff encounters a conflict of interests. But the objection is deprived of force in its application to the power to make titles, when it is remembered that, in every official act, the sheriff has to deal with adverse interests and litigant parties. And to the argument of danger in conferring this power on the sheriff, it may be replied that it is incomparably less than may be objected to his power to levy and sell under execution. It is not more difficult to ascertain the persons who have a legal right to the titles, than to distinguish the property of the defendant; and the sheriff can have no greater motive to convey to a wrong person, than to levy on laud not the properry of the defendant. Yery great inconvenience would ensue from denying the authority of the sheriff to execute titles fo the assignee, or legal represen-tive of the purchaser. If it is not lawful for him to execute titles, the Court of law could not’order him to do it; nor could the Court of Equity enforce a specific performance against him. The assignee, devisee, or heir of the purchaser, would be driven into equity against the defendant, his assignee, heir or devisee, for the execution of the contract.
The remaining question is whether the conveyance to the defendant is valid. Generally, the titles should be executed to the party having the legal estate. But if they had been made to the devisees, the laud was subject to a trust confided to the executor for the payment of debts. This he might have enforced against the devisees, in equity. The conveyance to him fulfils the intention of the will, by giving him possession for the peí formarme of the trusts; and when they are satisfied, the legal title will be executed, by operation of law, in the devisees.
The motion is refused.
The whole Court concurred.
Motion refused.